RUTAN & TUCKER, LLP
Richard K. Howell (State Bar No. 144241)
Jeffrey B. Fohrer (State Bar No. 251308)
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Plaintiffs
NEUPORT ASSOCIATES, LLC and JARED POBRE

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 15 2016

Sherri R. Carter, Executive Officer/Clerk
By Donita Fowler, Deputy

CASE MANAGEMENT CONFERENCE
1/9/17 DEPT. N
Date
8:30am
Judge C. Karlan

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, WEST DISTRICT

NEUPORT ASSOCIATES, LLC, a Nevada limited liability company; and JARED POBRE, an individual,

Plaintiffs,

v.

CAMERON NEWTON, an individual; LUXURY RETREATS MANAGEMENT, INC.; and DOES 1 through 30, inclusive,

Defendants.

Case No. SC126419

**PLAINTIFFS' COMPLAINT FOR:**

**(1) BREACH OF CONTRACT [Third Party Beneficiary];**
**(2) BREACH CONTRACT; AND**
**(3) NEGLIGENCE**

Plaintiffs Neuport Associates, LLC ("Neuport") and Jared Pobre ("Pobre," and collectively with Neuport, "Plaintiffs") allege as follows:

**THE PARTIES**

1. Neuport is a Nevada limited liability company with its principal place of business in Los Angeles County, California.

2. Jared Pobre is, and at all relevant times was, an individual residing in Los Angeles County, California.

3. Plaintiffs are informed and believe that defendant Cameron Newton ("Newton") is an individual employed by the Carolina Panthers of the National Football League.

4. Plaintiffs are informed and believe that defendant Luxury Retreats Management,

Inc. ("LRM") is, and at all relevant times was, a corporation that conducts business in California and throughout the United States.

5. Plaintiffs are unaware of the true names and capacities of defendants Does 1 through 30, inclusive, and therefore sues these defendants by such fictitious names. Plaintiffs will amend this Complaint to show the true names and capacities of such fictitiously named defendants when the same have been ascertained or upon proof at trial. Plaintiffs are informed and believe and based thereon alleges that each of the fictitiously named defendants is legally responsible for the events and damages alleged herein and/or jointly and severally liable for the debts and obligations of other defendants as alleged herein.

6. Plaintiffs are informed and believes and based thereon alleges that at all relevant times certain of the defendants, including the Doe defendants, were, unless alleged otherwise, acting as the partners, agents, servants, employees, alter egos, successors or predecessors in interest, or contractors of others of the defendants, and were acting within the course and scope of such relationship, with the knowledge, express or implied, of each such other named defendants.

**THE SUBJECT PROPERTY**

7. The real property that is the subject of this action consists of a high-end, luxury home on a residential lot commonly known as "Casa de Soltero," located at 520 Leslie Lane, Beverly Hills, California 90210 (the "Property"). Neuport is the owner of Leslie Lane, LLC, which company owns the Property.

**GENERAL ALLEGATIONS**

8. In approximately September 2015, Pobre, as a managing member and officer of Neuport, entered into a written "Owner Marketing Agreement" with LRM through which LRM agreed to market the Property to highly discerning clientele to rent on short term bases.

9. Under the Owner Marketing Agreement, LRM was to "earn[] commissions equal to 30% of all rental revenues generated by LRM for the Property. After receiving the initial client deposit, LRM will pay Owner 20% of the rental revenues. The remaining 50% of the rental revenues will be paid to Owner 45 days prior to the arrival of the client. For a reservation made within 45 days of the client's arrival, LRM will pay 70% of the rental revenues once received from

the client."

10. The Owner Marketing Agreement also provides in relevant part that "[t]his Agreement has an initial one-year term starting on the date of this Agreement and will be automatically renewed for successive one-year terms."

11. The Owner Marketing Agreement also provides that "[a]ny claim for damages must be made to LRM within 10 days of the client's departure. If the claims are substantiated, LRM will mediate a settlement between Owner and the client, if such mediation is unsuccessful, will use diligent efforts to charge the credit card on file for the amount of damages."

12. The Owner Marketing Agreement further provides in relevant part that "[t]his Agreement will be governed by and interpreted in accordance with the laws of California and all disputes arising under this Agreement will be referred to the courts of California."

13. Prior to Newton leasing the Property, LRM had previously leased the Property to an individual who had damaged the Property. More specifically, in approximately December 2015/January 2016, Plaintiffs, through LRM, rented the Property to a high net worth individual on a short term basis. Unfortunately, the individual caused extensive damage to the Property, resulting in tens of thousand dollars to make repairs thereto. Ultimately, this prior tenant compensated Pobre for the damage.

14. On January 27, 2016, Wade Manricks ("Manricks"), a Villa Specialist with LRM, wrote Pobre an email in which he stated in relevant part "I understand and appreciate the level of frustration you must have felt and again [with respect to the individual who damaged the Property in December/January], can only apologize for the manner in which the guest treated the home. . . . I'll put the onus on myself to consider more closely exactly what guest we put in the house. I hope you see that I do take these things seriously and always want the best for both my clients and of course my owners. As mentioned – asset protection is paramount to our success as a company."

///

///

///

15. While Plaintiffs were in the midst of trying to recover the damages to the home from the above-discussed individual staying at the Property, LRM presented Newton as a possible new short-term lessee for the Property. In that context, LRM represented that it had worked with Newton before and told Plaintiffs that LRM had not had an issue with Newton regarding previous rentals. Thereafter, on approximately January 19, 2016, Newton entered into an agreement with LRM to rent the Property from March 1, 2016 through May 1, 2016 for up to 8 guests, subject to the written terms and conditions for the Property. In the booking request agreement, Neuport was identified as the owner of the Property. For the 61 days term of this lease (the "Rental Agreement"), Newton agreed to pay LRM, the sum of $123,000.42.

16. The terms and conditions of the Rental Agreement state in relevant part that "The Company is an agent to the owner and/or the property management company of the Property. Additionally, in the written terms and conditions of the Rental Agreement, Newton agreed to be "solely responsible for all damages . . . in connection with the occupancy or use of the Property by you or your guests." Newton further agreed, pursuant to the same terms and conditions, to "ensure that the Property and all furniture, fixtures, and effects remain in the same condition and location as when you checked in." The terms and conditions of the Rental Agreement further provided that the Property was a "non-smoking villa," the Property was to have a "maximum 8 guests" and "social events" and "parties" are "not permitted."

17. Shortly following the commencement of Newton's lease of the Property, Plaintiffs became aware of damage caused to the Property by Newton and/or his guests. On March 9, 2016, Pobre informed LRM in an email that the house-keeper "is telling me she's smelling strong smoke in [t]he house and has personally seen cigarette ash in the kitchen. She has smelled the smoke on more than a couple occasions. I need you to personally speak with the renter and express the potential damages he may be causing." In response, Manricks replied by email "already done . . . Obviously, we are taking this *very* seriously as well."

///

///

///

18. The damage to the Property, however, did not cease. On March 14, 2016, Plaintiffs learned from a housekeeper that it appeared Newton "had a bit of a party. Some of the towels are ruined and the handle on the fridge is broken." Plaintiffs immediately raised these issues with LRM along with Newton's apparent admonition to the housekeeper "not to talk about his activities."

19. In response, Manricks told Pobre that LRM's CEO was "going to make it a point to address all this with Cam and reinforce the message." Manricks further told Plaintiffs "I can understand your frustration and sensitivity to the issue based on the last rental but I can assure you, this is not and will not become anything like that. All the same, they will have to abide by the no-smoking requirement."

20. The damage did not cease to the Property nor did Defendants compensate Plaintiffs for the damage caused to the Property. Following Newton's departure from the Property on approximately May 1, 2016, Plaintiffs sent LRM on May 6, 2016 an itemized spreadsheet of the damage to the property and the amount incurred for the repairs. LRM acknowledged receipt of the damages and stated it would get back to Plaintiffs.

21. LRM, however, failed to meaningfully respond to the damages identified by Plaintiffs. In addition, LRM failed to arrange a mediation between Newton and Plaintiffs regarding the damage caused by Newton and/or his guests to the Property. LRM likewise failed to tender to Plaintiffs the $10,000 security deposit Newton put on file in connection with his lease of the Property and LRM apparently failed to charge Newton's credit card on file for the damage caused to the Property.

22. Thereafter, on August 3, 2016, Plaintiffs' counsel sent Newton a letter again seeking reimbursement for the damages caused by Newton and/or his guests to the Property. In that letter, Plaintiffs' counsel enclosed the itemization of damages and color photographs evidencing the damage to the Property.

23. In response, on August 8, 2016, Newton's counsel responded with a letter asking for the same itemization of damages previously included in Plaintiffs' counsel's August 3, 2016 correspondence.

24. Plaintiffs' counsel responded with a letter to Newton's counsel on August 11, 2016 again enclosing the same itemization of damages and color photographs evidencing the damage to the Property included in the August 3, 2016 correspondence.

25. Neither Newton nor his counsel responded to Plaintiffs' August 11, 2016 correspondence. Accordingly, on August 22, 2016, Plaintiffs' counsel sent Newton's counsel a further letter inquiring as to whether Newton would meaningfully respond. Again, neither Newton nor his counsel responded to this follow-up letter.

26. For its part, LRM likewise has ceased responding to communications from Plaintiffs regarding the damage caused by Newton and/or his guests to the Property.

27. Plaintiffs have incurred substantial expenses in performing repairs and corrective work in order to address the damage caused by Newton and/or his guests to the Property, which expenses amount to not less than $90,324.47. In addition to these damages, Plaintiffs also were unable to rent out this Property for two and a half months while remedial work was being performed. The agreed rate for the Property was $72,000 a month. Consequently, this equates to an additional $180,000 ($72,000 x 2.5) that Plaintiffs have been damaged as a result of being unable to rent the Property while trying to remedy the damage Defendants so recklessly caused or allowed during Newton's two month stay.

## FIRST CAUSE OF ACTION

**(Breach Of Contract [Third Party Beneficiary Theory By Neuport] Against Newton and Does 1 through 30)**

28. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in the foregoing paragraphs of this Complaint.

29. On approximately January 19, 2016, Newton and LRM entered into the Rental Agreement for the Property. Each of Newton and LRM understood that Neuport was the owner of the Property and that the Rental Agreement was, in part, for the benefit of Neuport.

30. Neuport performed all conditions, covenants, and promises required on its part to be performed in accordance with the Rental Agreement, except those conditions, covenants, and promises for which performance was excused and/or waived by the acts and omissions of

Defendants, if any.

31. Newton materially breached the Rental Agreement by (either personally or via one of his guests), among other things: (i) staining the rug in the family room such that a replacement for $32,930.48 had to be ordered; (ii) damaging wall coverings in the entryway, kitchen, and office; (iii) breaking the sub-zero refrigerator handle; (iv) causing fluid to stain the driveway; (v) destroying bath towels; (vi) ruining various linens with an unidentified liquid; (vii) causing damage to the toilets and causing water damage to the wood floors; (viii) smoking on the Property; and (ix) having unauthorized parties and/or social gatherings at the Property.

32. As a direct and proximate result of Newton's breaches of the Rental Agreement, Neuport has suffered damages including, but not limited to, expenses incurred in connection with making repairs and corrections to the Property, in an amount to be proven at trial, but in no event less than $270,324,47.

**SECOND CAUSE OF ACTION**

**(Breach Of Contract [By Pobre] Against LRM and Does 1 through 30)**

33. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in the foregoing paragraphs of this Complaint.

34. Implied in the Owner Marketing Agreement is a covenant of good faith and fair dealing that imposed upon LRM an obligation to act in good faith and deal fairly with Pobre in connection with the performance of the Owner Marketing Agreement, and to avoid taking any action which would deprive Pobre of the benefits of the Owner Marketing Agreement.

35. Pobre has performed all conditions, covenants, and promises required on his part to be performed in accordance with the Owner Marketing Agreement, except those conditions, covenants, and promises for which performance was excused and/or waived by the acts and omissions of LRM, if any.

36. LRM materially breached the Rental Agreement by, among other things: (i) failing to discharge its duties as property manager inasmuch as it failed to prevent Newton and/or his guests from causing such extensive damage to the Property despite LRM being on express notice of such ongoing damage; (ii) failing to arrange a mediation between Newton and Plaintiffs

regarding the damage caused by Newton and/or his guests to the Property; (iii) failing to tender to Pobre the $10,000 security deposit Newton put on file in connection with his rental of the Property for the damage Newton and/or his guests caused to the Property; and (iv) apparently failing to charge Newton's credit card on file for the damage caused to the Property.

37. As a direct and proximate result of LRM's breaches of the Rental Agreement, Pobre has suffered damages including, but not limited to, expenses incurred in connection with making repairs and corrections to the Property, in an amount to be proven at trial, but in no event less than $270,324,47.

**THIRD CAUSE OF ACTION**

**(Negligence [By Pobre] Against LRM and Does 1 through 30)**

38. Plaintiffs reallege and incorporate herein by this reference each and every allegation contained in the foregoing paragraphs of this Complaint.

39. As set forth in the Rental Agreement, LRM was the agent of Pobre with respect to Newton's short term rental of the Property.

40. Although Pobre repeatedly put LRM on notice of damage being caused by Newton and/or his guests to the Property, LRM was negligent inasmuch as it failed to address with Newton (let alone cease or fix) the damage Newton and/or his guests caused to the Property.

41. As a result of LRM's negligence, Pobre has suffered damages including, but not limited to, expenses incurred in connection with making repairs and corrections to the Property, in an amount to be proven at trial, but in no event less than $270,324,47. LRM's negligence was a substantial factor in causing Pobre's harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For compensatory damages in amount to be determined at trial, but not less than $270,324,47;

2. For attorneys' fees if and to the extent permitted by applicable law;

3. For costs of suit incurred herein;

4. For such other and further relief as the Court deems just and proper.

Dated: September 15, 2016

RUTAN & TUCKER, LLP
RICHARD K. HOWELL
JEFFREY B. POHRER

By: ______________________
Richard K. Howell
Attorneys for Plaintiffs
NEUPORT ASSOCIATES, LLC and
JARED POBRE

Rutan & Tucker, LLP
attorneys at law

2345/033306-0001
10079812.1 a09/15/16

-9-
COMPLAINT